Layne EZELL

v.

ASSOCIATES CAPITAL CORPORATION.

Supreme Court of Tennessee.

Oct. 21, 1974.

Rehearing Denied Dec. 16, 1974.

Lloyd Comer, Lawrenceburg, for petitioner.

Boston & Weatherford, Lawrenceburg, for respondent.

OPINION

HENRY, Justice.

This is a suit upon an implied contract to procure or provide automobile insurance.

On November 2, 1970, petitioner purchased from Donald Washburn Motors, of Lawrenceburg, a 1968 Plymouth Barracuda, for $1,050.00, plus his trade-in.

He executed a retail installment sales contract, and a promissory note on the

same date. These documents, together with the disclosure statement, indicate that after credit life, credit health and accident, and property damage insurance were added, and after finance and interest charges at the rate of 21.75% were added, he owed a total of $1,632.00, for which he executed his note payable at the rate of $68.00 per month for twenty-four (24) months.

The record reflects that the contract and note were assigned to Associates Capital Corporation on November 3, 1970.

The sales contract shows on its face, under the heading "amount, if any, included for insurance and other benefits," the following:

> For automobile for a term commencing 11/2/70 and ending 11/2/71 $100.00 deductible collision . . . comprehensive.

The disclosure statement shows "Physical damage insurance $160.00."

The foregoing facts appear from exhibits to the Bill of Exceptions.

This case was tried to a jury and, at the conclusion of plaintiff's proof, counsel for the defendant moved the court for a directed verdict. This motion was overruled, and the defendant elected to stand on its motion. We, therefore, treat the motion as having been made at the conclusion of all proof.

The Court of Appeals reversed the trial court and dismissed plaintiff's suit. We granted certiorari and have heard argument.

█ Under an unbroken line of cases, both of the Court of Appeals and of this Court, it is the duty of the appellate court on complaint of error in directing a verdict to examine the record and determine whether there is any competent, reasonable, and determinative evidence to support the verdict. In this examination the appellate court must look to all evidence, take the strongest legitimate view in favor of the party opposing the motion, disregard all countervailing evidence, and indulge all reasonable inference to uphold the verdict. Williams v. Town of Morristown, 32 Tenn.App. 274, 222 S.W.2d 607 (1949); Fortune v. Holmes, 48 Tenn.App. 497, 348 S.W.2d 894 (1960); Perry v. United States Fidelity & Guaranty Co., 49 Tenn. App. 662, 359 S.W.2d 1 (1962).

We gauge plaintiff's testimony by these established standards.

The record reflects that plaintiff contacted Associates Capital about financing his automobile purchase and was told that he "would have to have insurance;" that collision insurance would be required and "that they could write it and include it in my monthly payments." Plaintiff agreed, and after the transaction was completed, he was told by Associates Capital that it had written the insurance. He relied upon this representation. No policy of insurance was ever delivered to plaintiff, nor was he ever told that the policy was for only one year. To the contrary, it was his understanding that it was for the life of the loan. He thought his policy was with Associates Capital.

The sales documents were prepared by Associates Capital.

Plaintiff made twelve payments to Associates Capital, and on December 10, 1971, his automobile was virtually destroyed in an accident. It was at this time that he learned that his collision policy had lapsed.

Plaintiff received no notice, from any source, of the expiration of his policy.

The Court of Appeals, in its opinion, states that "The only witness to testify was the plaintiff." Apparently the court overlooked the testimony of Herschell Ezell, father of plaintiff.

The plaintiff in the case lived and worked in Alabama. Apparently his father delivered the payments and generally served as his contact with Associates.

On November 25, 1971, he delivered the payment to Associates and nothing was said to him about the insurance having lapsed.

After the wreck of December 10, 1971, he went to the Lawrenceburg office of Associates to check on the insurance and was informed that his son had no insurance. He testified, in part, as follows:

> So, I ask her about the insurance and she said, well, maybe not in these words, I don't remember the exact words, but she admitted that she goofed, that she overlooked his card and she hadn't sent the payment in and she had let his insurance lapse. But now she said he won't know anything about it because they won't send him a notice.

Thus, the record reflects, and it may be inferred fairly and reasonably, that the collision coverage was a requirement of Associates Capital and that its procurement was for its basic benefit and protection. However, it also inured to the benefit of the customer for his benefit and protection. Associates Capital procured the policy from a company of its selection, collected the premium and remitted to the company.

In our view, the evidence, viewed in its totality, creates an implied contract to procure collision insurance coverage and keep it in effect during the life of the loan. Plaintiff had a right to assume and to proceed upon the assumption that Associates Capital would abide its implied agreement. Any other conclusion places the customer at the mercy of the finance company; permits the company to "goof" with impunity, and disturbs the conscience of the Court.

An agent employed to keep up insurance is liable if he neglects to continue the insurance, either by renewal of an expired policy or by properly maintaining an existing policy. He is under an affirmative duty to notify his client if he is unable to continue coverage, and his failure to do so will make him liable. 43 Am.Jur.2d, Insurance § 177.

The judgment of the Court of Appeals is reversed, and the trial court is affirmed. The costs in all courts will be paid by respondent.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.