**Certiorari Granted, May 24, 2013, No. 34,132**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-063**

**Filing Date: April 17, 2013**

**Docket No. 31,631**

**AMERICAN FEDERATION OF STATE,**
**COUNTY AND MUNICIPAL EMPLOYEES,**
**(AFSCME) COUNCIL 18, AFL-CIO, CLC,**
**AFSCME LOCAL 1888, AFSCME LOCAL**
**3022, AFSCME LOCAL 624, and AFSCME**
**LOCAL 2962,**

       **Plaintiffs-Appellees,**

**v.**

**THE CITY OF ALBUQUERQUE,**

       **Defendant-Appellant,**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay P. Campbell, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
Albuquerque, NM

for Appellees

City of Albuquerque
David Tourek, City Attorney
Rebecca E. Wardlaw, Assistant City Attorney
Michael I. Garcia, Assistant City Attorney
Gregory S. Wheeler, Assistant City Attorney
Samantha Hults, Assistant City Attorney
Rachel Trafican, Assistant City Attorney
Albuquerque, NM

Conklin, Woodcock & Ziegler, P.C.
Robin A. Goble
Albuquerque, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}** The City of Albuquerque (the City) appeals the district court's order granting multiple chapters of the American Federation of State, County, and Municipal Employees (the Unions) injunctive relief. The district court ordered the City to honor expired collective bargaining agreements (CBAs) until new CBAs were successfully negotiated pursuant to the Public Employee Bargaining Act's (PEBA) "evergreen provision." *See* NMSA 1978, Section 10-7E-18(D) (2003). The City argued, in part, that its Labor-Management Relations Ordinance (LMRO), Albuquerque, N.M., Ordinances ch. 3, art. 2, §§ 3-2-1 to -18 (1974, as amended through 2002), was entitled to grandfather status under NMSA 1978, Section 10-7E-26(A) (2003), and therefore exempt from compliance with the PEBA's evergreen provision. Because we agree with the City and conclude that the City's collective bargaining procedures are exempt from compliance with the evergreen provision, we reverse.

**BACKGROUND**

**{2}** The relationship between the City and the Unions is governed by the City's LMRO. The LMRO was enacted in 1974 and was most recently amended in 2002. *See* Albuquerque, N.M., Ordinances, §§ 3-2-1 to -18. The LMRO includes impasse resolution procedures, but it does not require that an expired CBA remain in effect until a successor CBA is reached. *See id.* § 3-2-14.

**{3}** On June 30, 2011, a number of CBAs between the City and the Unions expired. Despite negotiations, the parties were unable to reach agreement on successor CBAs. Once the CBAs expired, the City notified the Unions that it would no longer honor a provision of the CBAs that required the City to compensate union members for union business conducted during city work time. The City stated that it would, however, grant union representatives leave without pay so that they could continue to represent employees in grievance meetings, hearings, or arbitrations and that it would "offer other arrangements to accommodate efficient management/labor relations."

**{4}** The Unions sought injunctive relief, seeking to compel the City to comply with the expired CBAs until the parties had successfully negotiated successor agreements. The Unions argued that the PEBA's evergreen provision required the expired CBAs to remain in effect until new agreements were reached. Section 10-7E-18(D) ("In the event that an impasse continues after the expiration of a contract, the existing contract will continue in full

2

force and effect until it is replaced by a subsequent agreement."). The district court agreed with the Unions and granted the Unions' motion for injunctive relief, requiring the City to abide by the terms of the previous CBAs. The City now appeals.

**DISCUSSION**

**Standard of Review**

{5} Whether collective bargaining procedures with grandfather status under Section 10-7E-26(A) are required to comply with the PEBA's evergreen provision is an issue of statutory construction, which we review de novo. *City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 12, 274 P.3d 108. "In construing a statute, our charge is to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. "We will construe the entire statute as a whole so that all the provisions will be considered in relation to one another." *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. Statutes must also be construed so that "no part of the statute is rendered surplusage or superfluous," *In re Rehab.of W. Investors Life Ins. Co.*, 100 N.M. 370, 373, 671 P.2d 31, 34 (1983), and we will not "read into a statute . . . language which is not there." *Burroughs v. Bd. of Cnty. Comm'rs*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975).

**The PEBA's Grandfather Clause**

{6} Consistent with its purpose to guarantee public employees the right to organize and collectively bargain with their employers, the PEBA contains several provisions and procedures to ensure an orderly, harmonious, and efficient collective bargaining process for public employers and employees. NMSA 1978, § 10-7E-2 (2003). But the PEBA also includes an exemption for public employers, like the City, that adopted a system of procedures for collective bargaining prior to October 1, 1991. The applicable grandfather clause states:

> A public employer other than the state that prior to October 1, 1991[,] adopted by ordinance, resolution or charter amendment a system of provisions and procedures permitting employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives may continue to operate under those provisions and procedures. Any substantial change after January 1, 2003[,] to any ordinance, resolution or charter amendment shall subject the public employer to full compliance with the provisions of Subsection B of Section 26 . . . of the [PEBA].

Section 10-7E-26(A).

{7} Our Supreme Court has delineated a two-part test for determining when a public

3

employer's procedures are entitled to grandfather status under the predecessor version of Section 10-7E-26(A). *Regents*, 1998-NMSC-020, ¶¶ 34-35 (construing PEBA, Section 10-7D-26(A) (repealed 1999) (current version at Section 10-7E-26(A)). Tracking the language of the grandfather clause, the test requires that (1) a public employer has in place "a system of provisions and procedures permitting employees to form, join or assist any labor organization for the purpose of bargaining collectively through exclusive representatives" and (2) the public employer adopted the system of procedures before October 1, 1991. *City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 9, 141 N.M. 686, 160 P.3d 595 (emphasis, internal quotation marks, and citation omitted) (applying the *Regents*, 1998-NMSC-020, ¶ 34, test to the re-enacted PEBA grandfather clause under Section 10-7E-26(A)). This test is narrowly construed and applies to specific provisions of the public employer's system of procedures rather than to the policy as a whole. *Regents*, 1998-NMSC-020, ¶ 35. "In other words, portions of an employer's collective-bargaining system may fail this two-part test while the remainder may qualify for grandfather status." *Id.*

**The District Court's Decision**

**{8}** The district court concluded that the PEBA's evergreen provision applies regardless of the LMRO's grandfather status. Although the district court's reasoning is not entirely clear, it appears that the court was persuaded by the Unions' argument that non-compliance with the PEBA's evergreen clause would result in the City's being able to unilaterally impose new conditions of employment without those conditions having been the result of a good faith collective bargaining process. According to the Unions on appeal, this unilateral control is entirely inconsistent with the basic rights guaranteed by the PEBA, which was designed "to guarantee public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees and to protect the public interest by ensuring, at all times, the orderly operation and functioning of the state and its political subdivisions." Section 10-7E-2. Therefore, they argue, regardless of whether the City enjoys grandfather status under the PEBA, the PEBA nonetheless imposes on the City's collective bargaining procedures a requirement that the expired CBAs remain in effect until new agreements are reached.

**{9}** As an initial matter, we are not persuaded that the absence of an evergreen provision in the LMRO fundamentally violates the PEBA. The LMRO does not permit the City to unilaterally impose conditions of employment once a CBA has expired. Instead, the LMRO includes provisions for impasse resolution through mediation and voluntary binding arbitration. These provisions ensure that the Unions are participants in the determination of employment conditions even after a CBA has expired. This is consistent with the PEBA's overarching purpose.

**{10}** Furthermore, the Legislature's inclusion of a two-section grandfather clause indicates its intent that certain public employers should be exempt from compliance with every requirement of the PEBA. The first section of the clause, Subsection A (quoted above in

4

Paragraph 6), specifically provides that a public employer, other than the state, which has enacted a collective bargaining system prior to October 1, 1991, "may continue to operate under those provisions and procedures" despite the requirements of the PEBA. Section 10-7E-26(A). The second section of the grandfather clause, Subsection B, by contrast, requires public employers that adopted their collective bargaining systems after October 1, 1991, to include in those systems additional provisions and procedures in order to be otherwise exempt from the PEBA. *See* Section 10-7E-26(B)(1) to (9). Among the provisions that must be included are "impasse resolution procedures equivalent to those set forth in [Section 10-7E-18]." Section 10-7E-26(B)(8). The evergreen provision at issue is among Section 10-7E-18's designated impasse resolution procedures.

**{11}** These two subsections of the grandfather clause guide us in interpreting the PEBA as a whole and establish that the Legislature could not have intended the PEBA's evergreen clause to apply to *all* public-employer collective bargaining systems, regardless of grandfather status, as the Unions argue and as the district court held. Had the Legislature intended to impose the PEBA's impasse resolution procedures, including the evergreen provision, on all public employee bargaining procedures regardless of grandfather status, there would be no reason to distinguish between public employers that enacted their systems before October 1, 1991, and those that enacted their systems after that date. By requiring the latter to include an evergreen provision and by exempting the former from that requirement, the Legislature indicated that it did not intend the evergreen provision to be mandatory in all cases.

**{12}** We therefore reject the Unions' argument that the City must comply with the PEBA's evergreen clause regardless of the City's grandfather status. The Unions' alternative argument is that, although the City enacted its LMRO prior to October 1, 1991, the City's LMRO is not entitled to grandfather status because, in the absence of an evergreen clause, the LMRO violates the grandfather clause's requirement for "bargaining collectively." We must determine whether the Legislature intended to extend grandfather status to an LMRO like the City's that does not include an evergreen provision.

**Legislative Intent and the Grandfather Clause**

**{13}** We find guidance in our recent decision in *American Federation of State, County and Municipal Employees (AFSCME) Council 18 v. City of Albuquerque*, 2013-NMCA-012, 293 P.3d 943 (*AFSCME Council 18*), *cert. granted*, 2013-NMCERT-001, 299 P.3d 863. In that case, the unions argued that the city's impasse procedures were not binding, as required by the PEBA, and, therefore, that the LMRO "[did] not satisfy the 'collective bargaining' requirement for grandfather status."[1] *Id.* ¶¶ 12-13. This is similar to the argument the

_____

[1]Although the unions in *AFSCME Council 18* also argued that the absence of an evergreen provision precluded the city from attaining grandfather status, *see* 2013-NMCA-012, ¶¶ 12-13, this Court appeared to limit its holding to the absence of binding-impasse

Unions make in the present case to the effect that the absence of an evergreen provision in the LMRO is inconsistent with the notion of collective bargaining. We rejected the unions' argument in *AFSCME Council 18* because it "attache[d] an additional requirement to the PEBA's grandfather clause" by "demand[ing] that we evaluate the effectiveness of the LMRO as an avenue for collective bargaining." *Id.* ¶ 14. We concluded that the PEBA's grandfather clause does not include this requirement because it "requires only that the system adopted permit 'employees to form, join or assist a labor organization for the purpose of bargaining collectively through exclusive representatives'." *Id.* (quoting Section 10-7E-26(A)). The PEBA defines "collective bargaining" as "the act of negotiating between a public employer and an exclusive representative for the purpose of entering into a written agreement regarding wages, hours and other terms and conditions of employment." NMSA 1978, Section 10-7E-4(F) (2003) (internal quotation marks omitted). It says nothing about the relative effectiveness of the procedures adopted. *See City of Deming*, 2007-NMCA-069, ¶¶ 22-24 (stating that application of the grandfather clause is not dependent on an evaluation of the quality or effectiveness of the collective bargaining procedures).

**{14}** This analysis applies equally to the absence of an evergreen provision. According to the Unions, the LMRO's failure to include an evergreen provision constitutes ineffective "collective bargaining" and, as a result, the City does not qualify for grandfather status. But, as we said in *AFSCME Council 18*, the grandfather clause does not include a requirement of effectiveness, and we will not read one into it. *See City of Deming*, 2007-NMCA-069, ¶ 23 ("We do not give effect to or embrace legislative intent if we add language to a statute that the [L]egislature did not adopt.").

**{15}** In *AFSCME Council 18*, this Court also relied on the history of the PEBA, whose original version included "an effectiveness component" in the language of its grandfather clause. 2013-NMCA-012, ¶ 15. However, the Legislature removed this language when it reenacted the PEBA in 2003, *id.*, and we inferred from this "that the Legislature intended that a public employer's system of provisions and procedures permitting collective bargaining would not be subject to that type of [effectiveness] scrutiny to achieve grandfather status." *Id.*

**{16}** In addition, as we noted above and as we pointed out in *AFSCME Council 18*, the Legislature made a distinction between public employers, other than the state, that adopted their collective bargaining systems before October 1, 1991, and those that adopted those systems after October 1, 1991. *Id.* ¶ 17. The latter employers must include in their collective bargaining systems "impasse resolution procedures equivalent to those set forth in Section 18 . . . of the [PEBA]," which procedures include the evergreen provision at issue. Section 10-7E-26(B)(8). However, the Legislature specifically did not impose these requirements on employers, like the City, that enacted their systems *before* October 1, 1991. Section 10-7E-26(A). Therefore, we conclude here, as we did under similar circumstances

---

arbitration. *Id.* ¶¶ 19, 20, 23.

in *AFSCME Council 18*, that the Legislature did not intend that a public employer like the City must include an evergreen provision in its collective bargaining procedures in order to achieve grandfather status.

**{17}** We agree with the Unions that the PEBA's impasse resolution procedures, including the evergreen provision, would likely provide a more effective avenue for a favorable resolution to the current impasse. But that does not require us to disregard the clear legislative direction that grandfathered systems of collective bargaining under Section 10-7E-26(A) be exempt from compliance with these evergreen procedures. *Cf. Regents*, 1998-NMSC-020, ¶ 25 ("A grandfather clause preserves something old, while the remainder of the law of which it is a part institutes something new. A grandfather clause may have the effect of relieving an entity from submitting to new restrictions, or the clause may have the reverse effect of permitting the entity to avoid broadening the scope of its activities.").

**{18}** Because of our disposition on this issue, we need not address the City's remaining arguments concerning the expired CBAs' alleged conflict with the Anti-Donation clause of Article IX, Section 14, of the New Mexico Constitution, or their alleged violation of the Bateman Act, NMSA 1978, Sections 6-6-11 to -18 (1897, as amended through 1999).

**CONCLUSION**

**{19}** For the foregoing reasons, we reverse the district court's order granting the Unions preliminary and permanent injunctions requiring the City to honor the expired CBAs pending successful negotiation of successor CBAs.

**{20}** **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

**TIMOTHY L. GARCIA, Judge (specially concurring).**

**GARCIA, Judge (specially concurring).**

**{21}** I agree with the majority's position that language in *AFSCME Council 18*, 2013-NMCA-012, ¶¶ 12-17 and *City of Deming*, 2007-NMCA-069, ¶¶ 21-24, appear to control our decision in this case. I write to specially concur because in *AFSCME Council 18*, I asked our Supreme Court to re-address *City of Deming* and the grandfather status issue where the City's LMRO did not contain any final impasse resolution procedure that was

7

binding on the City. *AFSCME Council 18*, 2013-NMCA-012, ¶¶ 30-32 (Garcia, J., specially concurring). Because certiorari was granted by the Supreme Court in *AFSCME Council 18* and remains pending at this time, I believe that our ruling in this case could be nullified by the outcome of that appeal. *See id.*

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *AFSCME Council 18 v. City of Albuquerque*, No. 31,631**

**APPEAL AND ERROR**
Standard of Review

**EMPLOYMENT LAW**
Collective Bargaining
Labor Unions

**STATUTES**
Interpretation
Legislative Intent